UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
SABINE, INC., f/k/a
ROWECOM, INC., ET AL.,                          Chapter 11
                              Debtor.           Case No. 03-10668-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

CHRISTOPHER J. PANOS, TRUSTEE
OF THE ROWECOM LIQUIDATING TRUST,

                              Plaintiff,

v.                                              Adv. P. No. 05-1019-JNF

JUDE M. SULLIVAN,

                              Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM OF DECISION

I.    INTRODUCTION

The contested matters before the Court are the following: (1) "Defendant Jude

Sullivan's Motion to Dismiss" (the "Motion to Dismiss") the Complaint of Christopher J.

Panos, as the Trustee of the RoweCom Liquidating Trust (the "Plaintiff") in which

defendant Jude Sullivan ("Sullivan") seeks to dismiss the Plaintiff's Complaint against him

in its entirety; and (2) the Plaintiff's opposition thereto contained in  "Plaintiff's

Memorandum in Support of His Opposition to Defendant Jude Sullivan's Motion to

1

Dismiss." Both parties have filed memoranda of law and reply briefs.

On September 21, 2005, the Court conducted a hearing after which it took the

Motion to Dismiss under advisement, the Court directed that the parties file further briefs

addressing the Third Circuit Court of Appeals' recent decision in Stanziale v. Nachtomi (In

re Tower Air, Inc.), 416 F.3d 229 (3d Cir. 2005), and established a briefing schedule

regarding issues raised by the Motion to Dismiss. In compliance with that order, the

Plaintiff filed a "Memorandum of Plaintiff on Caselaw Post-Dating Motion to Dismiss

Briefing Period" and Sullivan filed "Defendant Sullivan's Supplemental Brief in Support

of His Motion to Dismiss."

## II.    THE PLAINTIFF'S COMPLAINT

The Court accepts the following facts alleged in the Complaint as true for purposes

of this decision. See Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206-07, 45 L. Ed. 2d

343 (1975).

The Debtor, Sabine, Inc., f/k/a RoweCom, Inc. ("RoweCom"), was a Delaware

corporation and a business-to-business provider of e-commerce solutions for purchasing

and managing the acquisition of magazines, journals, books and other printed sources of

commercial, scientific and general interest information and analysis. RoweCom generated

the majority of its revenue through the receipt of payments from its customers for

periodicals ordered by those customers, most of which were the libraries of colleges and

universities. Typically, RoweCom would receive subscription orders from its customers

before it received payment for the orders. RoweCom would then place the customers'

2

orders with various publishers and pay the publishers for those orders. As a general rule, the annual subscription payments to the publishers were typically due in December or January. The publishers would then ship the orders to the customers, who would then, in turn, pay RoweCom the subscription price. Because RoweCom advanced publication payments for its customers, it would have a large cash deficit at year end.

divine, inc., also a Delaware corporation ("Divine")[1], also was engaged generally in business-to-business e-commerce through a group of companies in which it had invested. Effective on November 6, 2001 (the "Acquisition Date"), RoweCom merged with a wholly-owned subsidiary of Divine.  As a result of this transaction (the "Acquisition"), RoweCom became a wholly-owned subsidiary of Divine.  It continued to use the name RoweCom. As part of the Acquisition price, Divine agreed to assume all of RoweCom's existing debt obligations and pay its future operating expenses.   On the Acquisition Date, Divine appointed Sullivan, the general counsel, vice president and secretary of Divine, as the vice president, secretary and sole director of RoweCom. As such, he had the authority to supervise, manage, and control RoweCom.  While holding these positions at RoweCom, Sullivan maintained his positions at Divine.

RoweCom had a negative net worth of at least $19 million on the Acquisition Date and its financial condition was perilous.  It was either unable to pay its obligations when due, or, at a minimum, there was serious risk that it would be unable to meet its future

---

[1] Divine is also a Chapter 11 debtor in this Court in Case No. 03-11472 filed on February 25, 2003.

3

obligations when they became due. RoweCom, therefore, was either insolvent or was within the zone of insolvency as of the Acquisition Date.

In the Spring of 2002, Divine required RoweCom to implement two pre-payment programs relative to its collection of subscription money from its customers. Under these Payment Programs, customers were required to bring their accounts current before RoweCom would place their orders with publishers and customers who pre-paid their orders by certain deadlines were given discounts on their orders (the "Payment Programs"). RoweCom began receiving money from customers under one or both of these Payment Programs as early as April 1, 2002. RoweCom's customers delivered the funds under these programs with the understanding that those funds would eventually be paid to publishers on their behalf.

Between April and December 2002, Divine transferred over $73 million in RoweCom customer payments from RoweCom's accounts to Divine's accounts. Although Divine claims that it used such funds to satisfy certain RoweCom loan obligations or operating expenses, the Plaintiff alleges that Divine had no right to use RoweCom customer prepaid funds to pay those liabilities because Divine had assumed responsibility for the payment of these obligations in connection with the Acquisition. Additionally, the Plaintiff alleges, Divine used certain RoweCom customer funds to pay for expenses related to other Divine operations which were unrelated to RoweCom's business. Sullivan was aware of the transfers and had authorized, or allowed without objection, Divine personnel to exercise authority over RoweCom bank accounts. Sullivan took no steps to oversee or control

4

Divine's use of RoweCom's funds.

Notwithstanding RoweCom's receipt of certain pre-paid funds from its customers under the Payment Programs, the Plaintiff alleges that Divine and Sullivan knew that RoweCom would need a sizeable cash infusion, in the form of bank loans or otherwise, in the last quarter of 2002 in order to pay publisher obligations and for customers to receive their publications. The Plaintiff further alleges that Sullivan failed to undertake or oversee efforts to secure such financing while he simultaneously allowed Divine to use RoweCom customer funds for Divine's own purposes.

In mid to late December 2002, at least $68 million in payments became due to publishers from RoweCom on behalf of its customers.  At that time, Divine notified RoweCom employees that it would not fund any of these obligations. On December 20, 2002, Divine announced its intent to divest the content subscription business delivered through RoweCom.  Thereafter, Divine refused to repay any of the more than $73 million that it had previously transferred to itself from RoweCom's accounts.

In early 2003, Divine and RoweCom attempted to sell RoweCom as a going concern. Before a sale could be effectuated, however, several RoweCom customers initiated lawsuits against RoweCom for its failure to place subscription orders with publishers.  Faced with a number of customer lawsuits, RoweCom and a number of its subsidiaries followed suit and filed petitions under Chapter 11 of the Bankruptcy Code (the "Code") on January 27, 2003. Divine and several of its subsidiaries also filed petitions for relief under Chapter 11 of the Code on February 25, 2003.

The Plaintiff alleges that Sullivan, based solely on his allegiance to Divine, breached his fiduciary duties to RoweCom and its creditors by delegating all RoweCom decision making to Divine personnel without oversight or management and engaged in corporate waste by allowing RoweCom to make a series of fund transfers to Divine at a time when RoweCom was insolvent.   As a result of these breaches, the Plaintiff alleges RoweCom and its bankruptcy estate were wrongfully deprived of funds that would otherwise be available to creditors.

Through Count I of the Complaint, the Plaintiff alleges that Sullivan breached his fiduciary duty of care by, *inter alia*: (1) delegating control of RoweCom to Divine and failing to monitor Divine's management of RoweCom; (2) allowing or failing to prevent the transfer of RoweCom funds by Divine and failing to reclaim those misappropriated funds; (3) failing to retake managerial control over RoweCom in light of Divine's obvious mismanagement and misappropriation of funds; and (4) failing to plan for RoweCom's significant cash needs in late 2002.  The Plaintiff alleges that these actions and inactions constituted gross negligence.

Through Count II of the Complaint, the Plaintiff alleges that Sullivan breached his duty of loyalty to RoweCom and its creditors by, *inter alia*: (1) acting or failing to act solely based on his allegiance to Divine; (2) failing to remain independent from Divine's influence; and (3) failing to make business decisions with a good faith belief that those decisions were in the best interest of RoweCom and its creditors.

Finally, through Count III of the Complaint, the Plaintiff alleges that Sullivan is liable

6

for waste of corporate assets because he authorized or allowed the transfer of $73 million

from RoweCom accounts to Divine accounts without any benefit to RoweCom.

## III.   THE MOTION TO DISMISS

Sullivan filed his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), made

applicable to this proceeding by Fed. R. Bankr. P. 7012.  He seeks dismissal of Counts I and

II of the Complaint because he asserts: 1) certain protective provisions in RoweCom's

corporate charter exempt him from liability; 2) the Delaware business judgment rule

protected his actions; and 3) the allegations that he engaged in self-dealing or otherwise

lacked independence were insufficient.  Sullivan seeks dismissal of Count III because he

asserts that the Plaintiff failed to allege the RoweCom funds transfers were not supported

by consideration.  Moreover, Sullivan argues, all of the claims in the Complaint are barred

by judicial estoppel and release.

The issue presented is whether the Plaintiff has pled sufficient facts in the Complaint

to survive dismissal.  For the reasons stated below, the Court finds that the Plaintiff has

alleged sufficient facts to overcome the Motion to Dismiss.

## IV.   DISCUSSION

A.   Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

When reviewing a Rule 12(b)(6) motion, the court must accept as true all allegations

of the complaint and construe the complaint in a light most favorable to the plaintiff.  See

Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206-07, 45 L. Ed. 2d 343 (1975).  The

Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts

upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957). "To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Fed. R. Civ. P. 8(a)(2)). See also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) ("A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint.").

In contrast to the federal notice pleading standard, Delaware courts have long imposed a more restrictive pleading standard which requires specific allegations of fact to support a plaintiff's demand for relief. In Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F. 3d 229 (3d Cir. 2005), the Court of Appeals for the Third Circuit recently set forth the applicable federal pleading standards for a suit against a Delaware corporation's directors and officers for breaches of fiduciary duties.[2] In Tower Air, the Chapter 7 trustee of a bankrupt airline sued former directors and officers of the debtor for breach of fiduciary duties under Delaware law. The district court granted the defendants' Rule 12(b)(6) motion and dismissed all counts of the complaint. The Third Circuit reversed, in part, holding that

---

[2] Although Tower Air is not binding on this Court, the Court finds it to be persuasive authority as the Third Circuit is the Court of Appeals which most frequently deals with Delaware law.  Notwithstanding this view, the Court will address the sufficiency of the Plaintiff's Complaint under both the notice pleading standard articulated in Tower Air as well as under the Delaware cases contained in the parties' briefs.

the district court erred in applying Delaware's Chancery Rule 8 rather than the more lenient federal notice pleading standard of Federal Rule of Civil Procedure 8. The court noted that, although Delaware courts interpret Delaware Chancery Rule 8 to require the plaintiff to plead facts with specificity, this is not the federal notice pleading standard. Id. at 237. According to the Third Circuit, under Federal Rule 8, the plaintiff need only plead the "basic facts" necessary to provide the defendant with fair notice of the plaintiff's claims and the general factual background upon which it rests, and should not, therefore, be deprived of the opportunity to pursue claims on a Rule 12(b)(6) motion for lack of detailed facts. Id. at 237 (citing Conley at 47). "To hold otherwise would be effectively to transform Rule 12(b)(6) motions into multi-purpose summary judgment vehicles." Id. at 238.

B.    Sufficiency of the Complaint

1.    Count I

Sullivan argues that the claims in Count I of the Complaint, captioned Breach of Fiduciary Duty of Care, in which the Plaintiff alleges that Sullivan's conduct constituted "gross negligence" are foreclosed as a matter of law because of an exculpatory provision in RoweCom's corporate charter. Article Eighth of RoweCom's Amended and Restated Certificate of Incorporation, which was attached to the Motion to Dismiss, provides: "The personal liability of the directors and officers of the Corporation is hereby eliminated to the fullest extent permitted by the [General Corporation Law of Delaware]." (the "Exculpatory Clause"). Sullivan asserts that this Exculpatory Clause affords officers and directors of RoweCom the same liability protection as that provided in Delaware General Corporation

9

Law § 102(b)(7).[3] Section 102(b)(7) permits Delaware corporations to adopt provisions in their certificates of incorporation which exculpate directors from liability for damages arising out of the breach of the duty of care, but not claims based on breach of the duty of loyalty, intentional misconduct or knowing violation of the law. Notably, Article Eighth of the RoweCom charter does not refer to or contain the statutory language of § 102(b)(7). The Plaintiff argues that such omission renders the clause ineffective for the purpose of limiting Sullivan's liability in this case.

Sullivan argues that the practical effect of the Exculpatory Clause is that claims of gross negligence and ordinary negligence, such as the duty of care claim in Count I of the Complaint, fall far short of the necessary allegations of intentional misconduct or knowing violation of the law required to overcome the Exculpatory Clause, and, therefore, do not survive a motion to dismiss. He relies on <u>Continuing Creditors' Comm. of Star Telecom.</u>

---

[3] Del. Code Ann. Tit. 8, § 102(b)(7) provides, in pertinent part:

(b) In addition to the matters required to be set forth in the certificate of incorporation by subsection (a) of this section, the certificate of incorporation may also contain any or all of the following matters:

(7) A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit. No such provision shall eliminate or limit the liability of a director for any act or omission occurring prior to the date when such provision becomes effective.

Inc. v. Edgecomb, 385 F. Supp. 2d 449, 464 (D. Del. 2004) and Malpiede v. Townson, 780

A.2d 1075, 1094-95 (Del. 2001) (both holding that exculpatory charter provisions shield

directors from claims of gross negligence).   The Plaintiff counters that the Exculpatory

Clause is invalid because it does not include the statutory language of 8 Del. Code §

102(b)(7), and therefore the clause does not protect Sullivan from the Plaintiff's breach of the

duty of care claims.

    The validity of the Exculpatory Clause and the extent of any immunity it affords

Sullivan is premature at this time because the question of whether the protective provisions

of Delaware General Corporation Law § 102(b)(7) were properly incorporated by reference

into RoweCom's charter is a legal one which will be determined at the summary judgment

stage of these proceedings.   In light of the Court's deferred consideration of the validity of

the Exculpatory Clause, the Court also defers consideration of Sullivan's argument that the

Plaintiff failed to plead specific facts supporting bad faith or intentional misconduct in

Count I of the Complaint.   Accordingly, the Court denies Sullivan's Motion to Dismiss with

respect to Count I.

    2.    Count II

    Sullivan argues that the claims in Count II of the Complaint, captioned Breach of

Fiduciary Duty of Loyalty, should be dismissed because the Plaintiff failed to overcome the

business judgment rule by alleging with sufficient particularity that Sullivan had a self-

interest in the challenged transactions or that he lacked independence.   The business

judgment rule "is a presumption that in making a business decision the directors of a

11

corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A. 2d 805, 812 (Del. 1984), *overruled on other grounds by* Brehm v. Eisner, 746 A.2d 244 (Del. 2000).  "As a general matter, the business judgment rule presumption that a board acted loyally can be rebutted by alleging facts which, if accepted as true, establish that the *board* was either interested in the outcome of the transaction or lacked the independence to consider objectively whether the transaction was in the best interest of its company and all of its shareholders." Orman v. Cullman, 794 A.2d 5, 22 (Del. Ch. 2002)(emphasis in original).  With respect to the first element, interest ". . . means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." Aronson 473 A.2d at 812 (citations omitted).[4]

On the separate question of independence, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson 473 A.2d at 816.  Independence ". . . involves an inquiry into whether the director's decision resulted from that director being *controlled* by another." Orman, 794 A.2d at 25 n.50 (emphasis in original).  Control may be demonstrated by a showing that the director is dominated by that other party, whether

---

[4] The Plaintiff concedes that he does not allege that Sullivan received a financial benefit in connection with the disputed transactions, see p 5., n. 2 to "Plaintiff's Memorandum in Support of His Opposition to Defendant Jude Sullivan's Motion to Dismiss." Therefore, the Court will only address whether the Plaintiff has pled sufficient facts alleging lack of independence.

through close personal or familial relationship or through force of will.  Id.  A director can

also be controlled by another if the challenged director is beholden to the allegedly controlling

entity.  Id.  A director may be considered beholden to another when the allegedly controlling

entity has the unilateral power to decide whether the challenged director continues to receive

a benefit, financial or otherwise.  Id.  Sullivan argues the Trustee fails to allege any benefit

that Sullivan received from Divine and that he merely alleges that Sullivan was an officer of

Divine.  Sullivan contends that a business relationship with an interested party, including

employment, *without more*, is insufficient to overcome the presumption of independence,

citing Orman 794 A.2d at 27 n.55 (emphasis added).

The Court finds that the Plaintiff has pled sufficient facts to demonstrate Sullivan's lack

of independent decision making as a result of Divine's domination and control to withstand

dismissal of Count II and that no allegation of a financial benefit is necessary.  The following

pleaded facts exemplify allegations of Divine's domination and control over Sullivan in his

capacity as an officer and the sole director of RoweCom:

(1) ". . . during the entire time that he was an officer and the sole director of RoweCom,

Sullivan either authorized, or allowed without objection, each material decision relating to

RoweCom's operations and finances to be made by Divine personnel."  (Compl. at ¶48); (2)

". . . during the entire time that he was an officer and the sole director of RoweCom, Sullivan

either authorized, or allowed without objection, Divine personnel to exercise authority over

RoweCom bank accounts and maintain approval control over all RoweCom expenditures."

(Id. at ¶ 49); (3) "Throughout Sullivan's tenure as officer and as sole director of RoweCom,

13

all business planning for RoweCom, to the extent any was done, was performed by Divine personnel." (Id. at ¶ 50); (4) "At no time after he became RoweCom's director, did Sullivan do anything to determine whether, from RoweCom's perspective, [Divine's new business plan for RoweCom] was a viable business plan or one that was in [RoweCom's] or its creditors' best interests." (Id. at ¶ 52); and (5) "... as director of RoweCom, Sullivan took no steps to oversee and control Divine's use of RoweCom's funds and further took no steps to ensure that Divine did not use the RoweCom customer funds for purposes unrelated to the publisher payments." (Id. at ¶ 68).   The Court notes that the above cited examples of domination and control alleged by the Plaintiff are founded more upon Divine's relationship with RoweCom rather than Sullivan's relationship with and employment by Divine.

The Tower Air court also addressed the business judgment rule and the requirement that a plaintiff "plead around it." Tower Air, 416 F.3d 229 at 238.   Under the standard articulated in Tower Air, a plaintiff must plead that he overcomes the presumption created by that rule by setting forth a simple and brief statement of claims of either irrationality or inattention on the part of the director such that the director has fair notice of the grounds of those claims.   Id. At 239.   To show irrationality, a plaintiff must demonstrate that no reasonable business person could possibly authorize the action in good faith,  Id. At 238 (citing Gagliardi v. TriFoods Int'l, Inc., 683 A.2d 1049, 1053-54 (De. Ch. 1996)), such that the only explanation for the decision is bad faith. Id. (citing Parnes v. Bally Entm't Corp., 722 A.2d 1243, 1246 (Del. 1999)).   Alternatively, the plaintiff may overcome the presumption that the directors and officers acted on an informed basis by establishing that the decision was the

14

product of an irrational process or that directors failed to establish an information and reporting system reasonably designed to provide the senior management and the board with information regarding the corporation's legal compliance and business performance, resulting in liability. Id. (citing In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 967-70 (Del. Ch 1996)).

With respect to Claim II of the Complaint for breach of the duty of loyalty, the Court finds that the Plaintiff's Complaint does set forth, at the very least, a simple and brief statement of claims of irrationality or inattention and gives Sullivan fair notice of the grounds of those claims.   The following pleaded facts exemplify allegations of irrationality and/or inattention on the part of Sullivan: (1) ". . . during the entire time he was a director, Sullivan never asked any RoweCom executive or other employee to prepare or present to him, as director and an officer of RoweCom, any financial or operational projections, budgets or historical reports."(Compl. at ¶47); (2) "Sullivan . . . fail[ed] to exercise any oversight over the financial and operational management of RoweCom, such that Divine personnel were able to make seventy-one (71) separate transfers of RoweCom's customers' funds,. . ., to Divine for no legitimate business purpose of RoweCom." (Id. at ¶95); (3) "Sullivan . . . fail[ed] to prevent Divine personnel from either using those customer funds for things other than RoweCom publisher payments or wrongfully retaining the customer funds for Divine's sole benefit." (Id. at ¶96); (4) ". . . Sullivan did absolutely nothing to prevent future transfers [of RoweCom funds] or to compel the return of the earlier transferred funds for the benefit of [RoweCom] or its creditors." (Id. At ¶99); and (5) "Sullivan . . . fail[ed] to exercise any oversight over the

15

planning for RoweCom's continued business operations, including, but not limited to his failing to plan for RoweCom's significant cash need in late 2002, when he knew that tens of millions of dollars would need to be available to pay publishers so that RoweCom's customers could receive the subscription orders they had placed with RoweCom throughout 2002." (Id. At ¶101).

The Court finds that the Plaintiff has sufficiently set forth allegations in the Complaint which, if true, indicate that no reasonable business person could have authorized the above described conduct in good faith, that such conduct was the product of an irrational process or, at the very least, inattention. See Tower Air at 238. Accordingly, the Court denies the Motion to Dismiss with respect to Count II.

### 3.    Count III

With respect to Count III of the Complaint, captioned Breach of Fiduciary Duty-Waste of Corporate Assets, Sullivan argues that to establish a corporate waste claim, the Plaintiff was required to have alleged sufficient facts to establish that the transfer of funds was so completely bereft of consideration that the transfer was, "in effect a gift," relying on Criden v. Steinberg, No. 17082, 2000 WL 354390, at *3 (Del. Ch. 2000)(citing Lewis v. Vogelstein, 699 A.2d. 327, 336 (Del. 1997)). Sullivan adds that the Plaintiff essentially alleges that Divine's use of RoweCom funds was a poor business decision and that the Plaintiff is, in essence, trying to substitute his business judgment for Sullivan's. The Court disagrees and finds that the Plaintiff has pled more than a hindsight evaluation of Sullivan's decisions with regard to the customer funds transfers and has alleged a total lack of consideration.

16

The Plaintiff alleges that Sullivan allowed Divine to use certain RoweCom customer funds to pay for expenses related to other Divine operations, for purposes which were unrelated to RoweCom's business, and that RoweCom did not receive *any* benefit from the funds transfers to Divine. <u>See</u>, Compl. at, *inter alia*, ¶¶ 66, 67 and 120. The Court finds that these allegations, if true, would establish that Sullivan authorized a series of exchanges which were "so one sided that no business person of ordinary, sound judgment could conclude that [RoweCom] . . . received adequate consideration." <u>Criden</u>, 2000 WL 354390 at *3. The Court rejects Sullivan's characterization of the Trustee's allegations as a reflection of "a difference in business judgment" and finds that reasonable, informed minds would not disagree on the adequacy of consideration if the Plaintiff's allegations prove true. <u>See</u> <u>Glazer v. Zapata Corp.</u>, 658 A.2d 176, 183 (Del. 1993).

Sullivan further contends that the corporate waste claim must fail because it rests completely on the Complaint's false characterization of the transfers of RoweCom funds as a one-way flow of funds from RoweCom to Divine. The Plaintiff alleges in the Complaint that Divine paid certain post-merger obligations and expenses of RoweCom and that Divine was obligated to do so because such payments were part of the consideration for the Acquisition. Sullivan argues that such payments were not part of the Acquisition consideration, and he cites provisions of the Agreement and Plan of Merger and Reorganization between the parties (the "Merger Agreement") to establish that RoweCom remained obligated for all of its pre-merger liabilities. Accordingly, Sullivan asserts, the $73 million in transfers was not "in effect a gift," but rather was indicative of a reciprocal flow of funds between the companies

17

and evidence that the Divine-RoweCom ledger had another side.    Resolution of this issue

requires the interpretation of the Merger Agreement and the application of that analysis to

the facts alleged in the Complaint.    Sullivan's argument is a legal one and inappropriate for

a motion to dismiss where the court assumes as true the well pleaded allegations of a

complaint.    See Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206-07, 45 L. Ed. 2d 343

(1975).    The Court denies the Motion to Dismiss with respect to Count III.

    C.    Judicial Estoppel

    Sullivan refers the Court to a "Motion for Substantive Consolidation of the RoweCom

Debtors to Facilitate Liquidating Plan" (the "Motion to Consolidate"), filed by RoweCom on

May 23, 2003, which the Court approved on July 8, 2003, in support of his Motion to Dismiss

on the grounds of judicial estoppel.    Through this motion, RoweCom sought to substantively

consolidate its Chapter 11 case with certain of its wholly owned subsidiaries (the

"Subsidiaries") which were also debtors in this Court.    Sullivan highlights the following

representations made by RoweCom in the Motion to Consolidate: (1) Since November 6, 2001,

RoweCom and the Subsidiaries did not maintain separate corporate minutes or any other

semblance of individual corporate identities (Motion to Consolidate at ¶ 22); (2) "All of

[RoweCom's and the Subsidiaries'] invoices and purchase orders contained Divine's name

and logo and not that of any of [them individually]" (Id. at ¶ 28); (3) RoweCom and the

Subsidiaries held themselves out to their subscription customers and publishers as either

Divine/faxon library services, Divine information services or simply as Divine. (Id. at ¶ 23);

and (4) "[I]t is unlikely that holders of unsecured claims reasonably relied on the fact that

18

[RoweCom and the Subsidiaries] were distinct entities at the time credit was extended. Most creditors believed that they were extending credit to a single entity." (Id. at ¶ 24).

Sullivan argues that the Plaintiff, as the successor of the RoweCom debtor, cannot enjoy the benefits received from the allowance of the Motion to Consolidate which contained representations that there was no distinction between RoweCom and Divine, and now pursue breach of fiduciary duty claims against Sullivan which are predicated upon Sullivan's treatment of RoweCom and Divine as a single entity. Sullivan argues that the Plaintiff should be barred from doing so under the doctrine of judicial estoppel which ". . . takes effect when the proponent has shown that the party to be estopped 'succeeded previously with a position directly inconsistent with the one [it] currently espouses.'" Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.), 375 F.3d 51, 60 (1st Cir. 2004)(quoting Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999)). See also, Payless Wholesale Distributors, Inc., v. Alberto Culver (P.R.) Inc., 989 F.2d 570 (1st Cir. 1993).

Assuming, arguendo, that the defense of judicial estoppel based upon representations in the Motion to Consolidate is properly before the Court in the context of a Rule 12(b)(6) Motion[5], the Court finds that the portions of the Motion to Consolidate referenced by Sullivan are not inconsistent or at odds with the claims advanced by the Plaintiff in this adversary proceeding. The above cited provisions of the Motion to Consolidate simply conveyed the internal billing and marketing practices of RoweCom and its Subsidiaries and the marketplace

---

[5] See Watterson v. Page, 987 F.2d 1, 3 ( 1st Cir. 1993)(". . . any consideration of documents not attached to the complaint...is forbidden...[h]owever, courts have made narrow exceptions for...official public records. . . .").

19

perception of those entities.  The presence of the Divine logo on RoweCom invoices and

marketing materials and the RoweCom entities' representations to customers under different

names, including the Divine name, are incidental and secondary to the primary objective of

the Motion, which was to consolidate the bankruptcy cases of RoweCom and its Subsidiaries,

not RoweCom and Divine. The provisions of the Motion to Consolidate cited by Sullivan do

not contradict the Plaintiff's allegations that Sullivan was essentially, at best, a passive officer

and director of RoweCom, and they do not assert that RoweCom and Divine were the same

entity or that they should be treated as such.  Accordingly, the Court finds nothing in the

Motion to Consolidate which warrants judicial estoppel of the Plaintiff's claims that Sullivan

breached his fiduciary duties to RoweCom and its creditors.

D.      Release

Lastly, Sullivan argues that the Complaint should also be dismissed because RoweCom

settled and released its claims against Sullivan in a previously filed stipulation (the

"Stipulation") through which RoweCom and Divine settled certain claims against each other.

The last sentence of Paragraph 1 of the Stipulation provides:

> The terms and consideration provided for in this Agreement shall be in
> full and final satisfaction of any and all Settled RoweCom Claims and any
> and all Claims held by any Entity arising from or based in any material
> way upon the facts and circumstances giving rise to the Settled RoweCom
> Claims.

Stipulation at ¶1.

By releasing Divine in that Stipulation, Sullivan argues, RoweCom released Sullivan

for any claims arising under the same facts. Sullivan further argues that the Plaintiff's claims against Sullivan constitute "Settled RoweCom Claims," as defined in the Stipulation, and, therefore, were released against him when the Court approved the Stipulation.   As an alternative ground to argue release, Sullivan refers the Court to an indemnification agreement entered into between Sullivan and Divine in 2000, prior to the RoweCom and Divine bankruptcy filings, under which Divine agreed to indemnify Sullivan for any claims arising out of his actions on behalf of Divine and its subsidiaries.   Sullivan argues that because the Plaintiff's claims assert that he was favoring his obligations to Divine over those to RoweCom and because Divine agreed to indemnify Sullivan for such claims, the Complaint is essentially a claim against Divine which has been released under the Stipulation.

The Plaintiff counters that the release provided in the Stipulation contained a carve-out for any D&O Claims[6] and that the claims now asserted against Sullivan constitute a preserved D&O Claim.   The Plaintiff cites Section 5(f) of the Stipulation which provides, in pertinent part:

> Nothing in this Agreement nor in the recitation of the asserted facts and arguments concerning the underlying basis for this Agreement, is intended to diminish, impair, constitute an election of remedy, waive or affect in any fashion whatsoever any Claims, any Causes of Action, any D&O Claims or any of the Examiner's Rights (each such term as defined in the Divine Plan), or any D&O Claims (as defined in the RoweCom Plan) arising out of the Divine Settled Claims and/or the RoweCom Settled Claims.

---

[6] D&O Claims are defined in the Sabine, Inc., f/k/a RoweCom, Inc. Third Amended Joint Plan of Liquidation as ". . . any and all claims against any director or officer of the Debtor [RoweCom] or of Divine, or any of their affiliates or subsidiaries, including without limitation all claims that are the subject of the Order appointing the Examiner." See p. 4 of such Plan.

Stipulation at § 5(f).  With respect to the Sullivan indemnity agreement, the Plaintiff argues

that any pre-petition indemnity obligation of Divine has no bearing on the Plaintiff's claims

against Sullivan and that any rights Sullivan may have under such agreement are limited to

filing a claim against the bankruptcy estate of Divine.

The Court finds that the Plaintiff's claims against Sullivan, which are claims against a

director and officer of RoweCom, fall squarely within the definition of D&O Claims set forth

in the Plan and thus are excluded from the release provided in the Stipulation by virtue of

Section 5(f) thereof.  The existence of a pre-petition indemnity agreement between Sullivan

and Divine does not provide Sullivan the means to circumvent the clear intention of the

Stipulation to preserve claims against former officers and directors.

### IV.    Conclusion

For all of the above reasons, the Court shall enter an order denying Sullivan's Motion

to Dismiss.  A pre-trial order shall issue.

By the Court,

Joan N. Feeney,
United States Bankruptcy Judge

Dated: February 27, 2006